UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THADDEUS R. DICKEY,

                 Plaintiff,              Civil Action No. 16-10118
                                              Honorable Nancy G. Edmunds
                                              Magistrate Judge David R. Grand
v.

CHARTER TOWNSHIP OF
CANTON, *et al.*,

                  Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [42] AND
TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [47]**

On January 4, 2016, *pro se* Plaintiff Thaddeus R. Dickey ("Dickey") filed a complaint in

the Third Judicial District of Wayne County, alleging violation of his rights under 42 U.S.C. §

1983, against Defendants Charter Township of Canton, Michigan, and Officers Champagne,

Kuznicki, Woodward, Dunlap, Bergsma, Harmon, and Nuottila (collectively "Defendants").[1]

(Doc. #1).   On January 14, 2016, Defendants filed a Notice of Removal, removing the case to

this Court.   (*Id.*).   On July 22, 2016, the Court granted Dickey leave to amend his complaint

pursuant to Fed. R. Civ. P. 15(a)(2).   (Docs. #17, #21, #45).

On February 7, 2017, Defendants filed a Motion for Summary Judgment.   (Doc. #42).

Dickey filed a response and a Motion for Summary Judgment of his own.   (Docs. #47, #50).

Defendants filed a response to Dickey's motion and a reply in support of their motion.   (Docs.

---

[1] These are the defendants that currently appear on the docket.   They are slightly different than
those listed in the original complaint; two of Dickey's amended complaints added Officer
Nuottila to the list of defendants (Docs. #7, #17); and on July 22, 2016, the Charter Township of
Canton substituted for the Canton Michigan Police Department as a defendant.   (Doc. #21).

#49, #51).    An Order of Reference was entered on January 29, 2016, referring all pretrial proceedings to the undersigned pursuant to 28 U.S.C. § 636(b)(1).  (Doc. #3).

Having reviewed the pleadings and other papers on file, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(Doc. #42)** be **GRANTED** and that Dickey's Motion for Summary Judgment **(Doc. #47)** be **DENIED**.

## II.    REPORT

### A.    Factual Background

Dickey's amended complaint relates to his arrest for loitering and disorderly conduct at a Walmart in Canton, Michigan, on October 10, 2014.  (Doc. #17).  Dickey went there at around 8:00 p.m. to buy tobacco and food to eat before taking his medications.  (*Id.* at 1; Doc. #42-2, Ex. A ("Dickey Dep.") at pp. 30-32).  He stood outside of the store smoking cigarettes and looking at his cell phone for what he estimates was approximately ten minutes.  (Docs. #17 at 1; #42 at 15; Dickey Dep. at 31-32; #42-5, Ex. D).  A Walmart surveillance video shows him leaning against the building's exterior next to its entrance, attempting to engage with customers as they go in and out of the store.  (Docs. #42 at 14-15; Dickey Dep. at 31-36; #42-5, Ex. D at 28:12, 28:58, 30:06, 33:24, 34:42, 58:26, 59:14, 1:01:59).  At about 30:03 of the video, Officer Champagne's police patrol car can be seen pulling up within the immediate vicinity of where Dickey was standing, giving Officer Champagne an unobstructed view of Dickey.  (Doc. #42-5, Ex. D at 30:03).  In several instances Dickey appears to have either some kind of handshake or a hand-to-hand

exchange with various customers.    (Docs. #42 at 14-15; Dickey Dep. at 31-36; #42-5, Ex. D at 28:12, 28:58, 30:06, 33:24, 34:42, 58:26, 59:14, 1:01:59).    In one of these instances a woman hands him a cigarette, and in another a woman hands him some money.[2]    (Doc. #42-5, Ex. D at 29:39-53, 58:21-30; 29:59-30:08, 30:23-43, 58:42-59:20).

Officer Champagne observed Dickey, who had multiple prior encounters with the Canton Police Department (including prior incidents at the Walmart in question in January and September of 2014)[3] from his police car.    (Docs. #17 at 1; #42 at 8-9, 15; Dickey Dep. at 16-29, 34-35).    He also followed Dickey when he went in to the store and tapped him on the shoulder at a water fountain Dickey stopped to get a drink from.    (Docs. #17 at 1; #42 at 16; Dickey Dep. at 37; #42-5, Ex. D at 08:32).    Dickey alleges that Officer Champagne asked him what he was doing, and he responded, "nothing[,] minding my own business."    (Docs. #17 at 1; Dickey Dep. at 37-41).    Dickey then walked away, and Officer Champagne started communicating with Dispatch Officer Kuznicki by radio about checking Dickey and sending backup.    (*Id.*).    According to Dickey, Officer Kuznicki identified him based only on a description of him being "heavyset and black."    (Docs. #17 at 1; Dickey Dep. at 42).    Officer Champagne continued to follow Dickey as he waited for backup officers to arrive.    (Doc. #17 at 1).    Dickey claims that he repeatedly told Officer Champagne that he had done nothing wrong or illegal; he alleges that Officer Champagne "harass[ed]" him and "and kicked him out [of the store] for no reason." (Docs. #17 at 1-2; Dickey Dep. at 40).

---

[2] Dickey testified that when he saw that the first woman was about to throw away a cigarette, he asked her if he could finish it.    (Dickey Dep. at 36).    Dickey testified that the second woman gave him money even though he had not asked her to do so.    (*Id.* at 33-34).

[3] In January 2014, Dickey had stolen food from the Walmart, and though he self-reported the theft to the police as he was leaving the store, he was later charged with a crime.    (Dickey Dep. at 21-24).    In September 2014, Dickey called 911 from the Walmart as he believed he needed emergency care.    (*Id.* at 28-29).    Dickey claims that three or four police cars and an ambulance arrived, and that an altercation ensued, resulting in him being handcuffed.    (*Id.*).

Believing that Officer Champagne had "no right to make [him] leave," Dickey re-entered the store.  (Doc. #17 at 2).  Dickey alleges that while waiting in line to buy tobacco, he was surrounded by Officers Champagne, Woodward, Dunlap, and Bergsma.  (*Id.*; Dickey Dep. at 44-45).  Dickey admits that he "got loud" with the officers.  (Dickey Dep. at 47-48).  Dickey alleges that after they handcuffed him, he "was asking everyone in the store to witness what was going on."  (*Id.*).  Dickey was ticketed for violating local ordinances prohibiting loitering and disorderly conduct.  (Docs. #42 at 19; #42-4, Ex. C at 09:05; #42-7, Ex. F; #42-8, Ex. G).  He was transported to the Canton Police Department and was released two days later.

On October 30, 2014, Dickey had apparently returned to the Walmart and was issued a ticket (which he does not contest in this lawsuit) for trespassing.  (Docs. #42-7; #47 at 1-2).  On February 9, 2015, Dickey appeared in 35th District Court before the Honorable Michael J. Gerou for a pretrial hearing.  (Docs. #42 at 20; #42-10, Ex. I).  Dickey entered into a plea agreement pursuant to which the tickets related to the October 10, 2014 loitering and disorderly conduct charges (at the heart of this case) were dismissed in exchange for Dickey's agreement to plead "no contest" to the October 30, 2014 trespassing charge.

On December 14, 2015, Dickey filed his initial complaint in the Wayne County Circuit Court, and Defendants removed the action to this Court.  (Doc. #1).  It is difficult to decipher the claims Dickey intends to state in his operative amended complaint, though he asserts it "is a Section 1983 claim," and references:  "false arrest"; "false police report"; "false imprisonment"; "false charges"; "failure to interveine [sic]"; "malicious prosecution"; "unlawful search and seizure"; "racial profiling"; and "pain and suffering."[4]  (Doc. #17 at 1-2).   He seeks

---

[4] While Dickey does not explicitly differentiate in his complaint between any federal and state claims, he asserts in his response to Defendants' motion that his rights under the First, Fourth, and Fourteenth Amendments of the U.S. Constitution were violated.  (Doc. #50).  "[A] plaintiff

$10,000,000.00 in monetary, compensatory, and punitive damages.  (*Id.* at 2).

B.     **Standard of Review**

When reviewing cross-motions for summary judgment, the court must assess each motion

on its own merits.  *See Fed. Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 415 F.3d

487, 493 (6th Cir. 2005).  Federal Rule of Civil Procedure 56 provides:  "The court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also*

*Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir.

2011).  A fact is material if it might affect the outcome of the case under governing law.  *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine

issue of material fact exists, the court assumes the truth of the non-moving party's evidence and

construes all reasonable inferences from that evidence in the light most favorable to the non-

moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

When the party without the burden of proof (generally the defendant) seeks summary

judgment, that party bears the initial burden of informing the court of the basis for its motion,

and must identify particular portions of the record that demonstrate the absence of a genuine

dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986);

*Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).  "Once the moving party satisfies

its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable

---

may not expand his claims to assert new theories for the first time in response to a summary
judgment motion."  *Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 F. App'x 659, 666
(6th Cir. 2012) (internal citations omitted).  At the same time, pleadings filed by *pro se* litigants
are entitled to a more liberal reading than would be afforded to formal pleadings drafted by
lawyers.  *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007).  Here, in light of Dickey's *pro
se* status and mental impairments, in addition to his state-law claims, the Court will liberally read
his complaint as asserting violations of his First, Fourth, and Fourteenth Amendment rights.

issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).  In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).  Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id*. (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)).  "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id*. at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

A moving party with the burden of proof (typically the plaintiff) faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).  Whereas, the moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial, where "the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. U.S.*, 799 F.2d 254, 259 (6th Cir. 1986) (internal citations omitted).  Accordingly, summary judgment in favor of the plaintiff "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Harris v. Kowalski*, No. 1:05-CV-722, 2006 WL 1313863, at *3 (W.D. Mich. May 12, 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999)).

In their motion, Defendants present three arguments why they are entitled to summary judgment:  (1) Dickey's federal claims against the individual officers are barred by qualified

immunity; (2) Dickey's state-law claims against the individual officers are barred by governmental immunity; and (3) Dickey fails to plead facts to support a finding of liability against the Charter Township of Canton. Dickey's summary judgment motion is largely a rambling recitation of his allegations, though he does identify a few specific pieces of evidence which he claims support his version of the events.

### C.    Analysis

#### i.    *The Individual Officers Are Entitled to Qualified Immunity as to Any Federal Claims Asserted by Dickey Under § 1983*

<u>The Qualified Immunity Standard</u>

Defendants assert that they – as individual officers – are entitled to qualified immunity as to Dickey's federal § 1983 claims. (Doc. #42 at 22-26). To establish a claim under § 1983, a plaintiff must prove that "(1) a person, (2) acting under the color of state law, (3) deprived [him] of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001). "Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (internal citations omitted).

Under the doctrine of qualified immunity, governmental officials performing discretionary functions are shielded from civil liability unless their conduct violates a clearly established constitutional right that a reasonable person would have known about. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is premised upon the avoidance of unnecessary burdens of litigation; the privilege is immunity from suit – not a mere defense to liability. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001).

Determining the applicability of qualified immunity requires a two-step inquiry into whether the facts, when viewed in the light most favorable to the plaintiff, would permit a

reasonable juror to find that:  (1) the defendant violated a constitutional right; and (2) the right was clearly established.  *Id.* at 201.  A plaintiff must satisfy both of these prongs "[t]o overcome an officer's entitlement to qualified immunity."  *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003).  But in conducting this inquiry, the court is "permitted to exercise [its] sound discretion in deciding which of [the prongs] . . . should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see also Bishop v. Hackel*, 636 F.3d 757, 772 (6th Cir. 2011).  With respect to the second prong, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation that he confronted."  *Saucier*, 533 U.S. at 202.  "The conduct of each individual defendant must be examined separately when determining whether the defendant violated the constitution and whether the defendant nonetheless is entitled to qualified immunity."  *Williams v. Collins*, No. 15-CV-337, 2017 WL 1196114, at *5 (S.D. Ohio Mar. 31, 2017) (citing *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010)).

Liberally construing Dickey's complaint, he alleges that Officer Champagne violated his First, Fourth, and Fourteenth Amendment rights, and that Officer Kuznicki violated his Fourteenth Amendment rights.  These claims are addressed below.[5]

---

[5] Dickey's response brief focuses primarily on challenging Officer Champagne's decision to follow him into the store (*i.e.*, asserting that the evidence shows he was not soliciting or loitering, and that Officer Champagne telling him to leave the store was "completely racially motivated"). (Doc. #50).  Dickey presents no evidence or specific argument as to a violation of his rights by Officers Woodward, Dunlap, Bergsma, Harmon, and Nuottila.  Reading Dickey's filings liberally, he may have intended to direct his "failure to intervene" claim against these individual officers, particularly Officers Woodward, Dunlap, and Bergsma, who allegedly assisted Officer Champagne in handcuffing Dickey and escorting him out of the store.  (Doc. #17 at 2).  But even if Dickey had explicitly directed his failure to intervene claim against them, he still would have no grounds for relief.  "A police officer may be held liable for failing to prevent the violation of a citizen's constitutional rights by another law enforcement officer."  *Bickel v. Broken Rocks Cafe*

a.   Officer Champagne

*First and Fourth Amendment Claims – Unlawful Arrest*

Dickey argues that Officer Champagne violated his First and Fourth Amendment rights by arresting him without probable cause. (Doc. #50 at 1-4). He claims that he was simply talking to people about a University of Michigan football game when he was arrested and had done nothing "wrong or illegal" and "had broken no law or violated any city ordinance." (Docs. #17 at 2; #47 at 1-2; #48 at 1; #50 at 2-3). He states that he "was arrested based off of a hunch that [he] was soliciting," which he avers he was not doing. (Docs. #47 at 3; #48 at 1-2; #50 at 5). He argues that the officers "do not deserve qualified immunity" because "they clearly over stepped [sic] their [boundaries] and scope of the law as police officers." (Doc. #50 at 3). Defendants argue that they are entitled to qualified immunity because there were "constitutional grounds" and "probable cause" to arrest Dickey. (Doc. #42 at 25-26).

"In order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that

---

*& Bakery*, No. 1:13 CV 01529, 2015 WL 6964572, at *7 (N.D. Ohio Nov. 9, 2015) (citing *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982)). To successfully assert a failure to intervene claim, "a plaintiff must prove that the officer observed or had reason to know that a citizen's constitutional right had been violated, and the officer must have 'both the opportunity and the means to prevent the harm from occurring.'" *Id.* (quoting *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008)). "For there to be a failure to intervene, there must be a corresponding duty." *Elkins v. Summit Cnty., Ohio*, No. 5:06-CV-3004, 2009 WL 1150114, at *9 (N.D. Ohio Apr. 28, 2009). In the Sixth Circuit, the issue of a police officer's duty to intervene often arises in excessive force cases. *Id.* (collecting cases). Here, Dickey does not allege that excessive force was used against him. Indeed, the surveillance video shows four unidentified male officers (possibly among those named as individual defendants) escorting him out of the store without any physical force, although the two officers walking next to him do touch his arms. (Doc. #42-5, Ex. D at 02:54, 07:00, 11:18, 12:23, 20:45, 23:48, 47:05, 48:12, 49:10). Moreover, Dickey does not state a proper failure to intervene claim against Officers Woodward, Dunlap, Bergsma, Harmon, and Nuottila because he does not show that they observed or had reason to know that his constitutional rights had been violated by another police officer. As discussed below, because Dickey's constitutional rights were not violated by Officers Champagne and Kuznicki, he cannot make this required showing. Thus, summary judgment as to Officers Woodward, Dunlap, Bergsma, Harmon, and Nuottila is appropriate.

the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002).  "A police officer has probable cause only when he discovers reasonably reliable information that the suspect has committed a crime."  *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). The law is clear that only those officers who participated in the arrest of an individual can be subject to liability for false arrest.  *See, e.g.*, *Sandul v. Larion*, No. 94-1233, 52 F.3d 326, at *4 (6th Cir. Apr. 11, 1995).  Here, there appears to be no dispute that Officer Champagne was the defendant directly involved in Dickey's ticketing and arrest; therefore, to the extent Dickey has claimed a Fourth Amendment violation against any of the other officers, those Defendants are entitled to summary judgment.

When deciding whether an arrest was supported by probable cause, a court should "look to the totality of the circumstances" and "consider only the information possessed by the arresting officer at the time of the arrest."  *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008) (internal citations omitted).  The Supreme Court has held that "[p]robable cause to arrest exists if the facts and circumstances within an officer's knowledge warrant a reasonable belief that a person has committed, is committing, or is about to commit a crime," including the violation of a city ordinance. *Neyland v. Molinaro*, 368 F. Supp. 2d 787, 792 (E.D. Mich. 2005) (citing *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)); *Legenzoff v. Steckel*, 564 F. App'x 136, 141 (6th Cir. 2014) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.") (quoting *Saucier*, 533 U.S. at 202).  Moreover, M.C.L. § 764.15 provides that a peace officer may make a warrantless arrest if an "ordinance violation is committed in the peace officer's presence."  M.C.L. § 764.15(1)(a).  Although probable cause is typically a jury issue in the context of § 1983, "an arresting agent is entitled to qualified

immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." *Everson*, 556 F.3d at 499 (quoting *Harris v. Bornhurst*, 513 F.3d 503, 511 (6th Cir. 2008)); *McCormick v. Charter Township of Chesterfield*, No. 05-70830, 2006 WL 2844457, at *2 (E.D. Mich. Sept. 30, 2006) ("Immunity is afforded even if law enforcement officials 'reasonably but mistakenly conclude that probable cause is present.'" (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991))).

Here, there is video evidence which establishes Officer Champagne's entitlement to qualified immunity because it shows he could reasonably have concluded that he had probable cause to arrest Dickey for loitering and/or soliciting.[6]  The following Canton Charter Township ordinances are applicable:

### Sec. 46-293. - Loitering in public.

No person shall loiter in or about any hotel, motel or other place of public resort or in any place where intoxicating liquors are sold, stored, kept or furnished and refuse to leave after being instructed to do so.

(Doc. #42-8, Ex. G at 2); (Ord. No. 81, as amended, § 2(C)(7), eff. 10-19-2000).

### Sec. 46-298. - Begging and soliciting alms.

\*\*\*

(b)      It shall be unlawful for any person to solicit money or other things of value:

---

[6] That Dickey was actually arrested for loitering and disorderly conduct, and not soliciting, is immaterial.  "[U]under the Fourth Amendment, an arrest is 'reasonable' if probable cause exists to believe that the arrestee has committed *any* crime – even if the arresting officer does not invoke that crime, and instead states that he is basing the arrest on some other offense for which probable cause does not exist." *McKinney v. Fields*, No. 07-CV-10652, 2009 WL 816886, at *4 (E.D. Mich. Mar. 27, 2009) (citing *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *United States v. Jones*, 432 F.3d 34, 41 (1st Cir.2005)) (emphasis in original).

(1)  On private property if the owner, tenant, or lawful occupant has asked the person not to solicit on the property, or has posted a sign clearly indicating that solicitations are not welcome on the property; [or]

\*\*\*

(8)  Within 15 feet of the entrance to or exit from a building, public or private, including, but not limited to, any residence, business, or athletic facility.

(c)      It shall be unlawful for any person to solicit money or other things of value:

(1)  By accosting another; or

(2)  By forcing oneself upon the company of another.

(Doc. #42-8, Ex. G at 2-3); (Ord. No. 81, as amended, § 2(B), eff. 10-19-2000).[7]

---

[7] Any challenge by Dickey to this ordinance's constitutionality would not be a basis for denying qualified immunity to Officer Champagne.  In *Speet v. Schuette*, 726 F.3d 867 (6th Cir. 2013), the Sixth Circuit found that the State of Michigan's anti-begging statute, which criminalized "begging in a public place," violated the First Amendment.  But this hardly means that a state or municipality may not enact *any* ordinances regulating solicitation.  Indeed, *Speet* expressly held that "Michigan may regulate begging" because "[s]oliciting financial support is undoubtedly subject to reasonable regulation[.]"  *Speet*, 726 F.3d at 880 (quoting *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980)).  Here, the ordinance, in relevant part, does not broadly restrict the right to panhandle in a public forum (such as a public street or sidewalk).  § 46-298.  Rather, one relevant section applies to "soliciting" on the "private property" of a landowner who has posted a sign clearly indicating that solicitations are not allowed.  *Id.  See also* § 54-3, *infra* at 13.  Defendants assert that there was a "No Soliciting" sign posted at the Walmart, and provide purported photographic evidence of same.  (*See* Doc. #42-9, Ex. H).  Dickey does not dispute this.  Another section of the ordinance imposes a spacial limitation ("Within 15 feet of the entrance to or exit from a building . . . ."), and yet another prohibits solicitation "by accosting" or "forcing oneself upon" someone else.  § 46-298.  At a minimum, the video evidence discussed herein shows that Dickey was standing precisely at the Walmart entrance/exit.  The Court found no case law which would have put Officer Champagne on notice that anti-solicitation provisions like the ones at issue are unconstitutional.  Moreover, Dickey presents no evidence that Officer Champagne was motived by a desire to quiet Dickey's speech, which is required to support a First Amendment freedom of speech claim.  *See Skovgard v. Pedro*, 448 F. App'x 538, 547-48 (6th Cir. 2011).  Accordingly, as long as Officer Champagne had probable cause to find that Dickey violated one of the ordinances, he would be entitled to qualified immunity as to any First or Fourth Amendment claim related to Dickey's arrest for violating that ordinance.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

**Sec. 54-3. - Soliciting, peddling or canvassing on posted premises or when requested not to do so.**

It shall be unlawful for any person to solicit, peddle or canvass upon any premises in the township, if requested by anyone in control upon the premises not to do so, of if there is placed on such premises in a conspicuous position near the entrance thereof a sign or similar notice indicating in any manner that the occupants of such premises do not desire to have solicitors, canvassers or peddlers call upon them.  For purposes of this section, soliciting and peddling include religious proselytizing, political speech (anonymous or otherwise) and passing out handbills.

(Doc. #42-8, Ex. G at 4); (Ord. No. 50, as amended, § 3(4), 11-14-1995; Ord. No. 50(E), § 3(4), 4-8-2003).

Based on the events depicted in the Walmart surveillance video, Officer Champagne had probable cause to arrest Dickey for violation of one or more of these ordinances.  The video depicts Dickey approaching people and/or initiating conversation with them as he stands at the entrance of Walmart, which is a place that sells alcohol.[8]  (Doc. #42-5, Ex. D at 25:34, 27:21, 28:12, 28:30, 29:19, 30:05, 30:14, 31:58, 33:37, 34:39, 34:45).   It also shows him receiving money and a cigarette from two different customers walking by.  (Doc. #42-5, Ex. D at 25:25, 28:59, 33:20).  While Dickey denies asking for money, he did request the cigarette by asking the patron if he could finish it as she was attempting to throw it away.   (Dickey Dep. at 36). Regardless, Dickey admits that he received these things, and it was reasonable for Officer Champagne to conclude that these exchanges involved requests by Dickey.[9]  On these facts, there was probable cause to arrest Dickey for violating at least the local ordinances regarding soliciting, if not loitering, as well.

---

[8] *See* http://www.dleg.state.mi.us/mlcc/liclists/act_wayne.pdf (last visited July 20, 2017).

[9] Again, Dickey does not dispute Defendants' assertion that there was a "No Soliciting" sign posted at the store.  (*See* Doc. #42-9, Ex. H).  And, even if there was not such a sign, there was still probable cause for Dickey's arrest under subsection 8 of the § 46-298 anti-soliciting ordinance because Dickey's conduct took place at the store's entrance.

Dickey argues that he was not loitering or soliciting, but rather was merely standing outside the store talking to people and smoking cigarettes, meaning Officer Champagne "had no authority or right" to tell him to leave. (Dickey Dep. at 32-36; Docs. #47 at 1; #48 at 1-2; #50 at 2). He also argues that entering the store on his own "proves [he] had a [legitimate] purpose" for being there. (Doc. #47 at 1-2). Dickey points out that the video shows that Officer Champagne asked a customer Dickey had spoken to about their conversation. (Docs. #42-3, Ex. B "Test Officer"; #50 at 2). Dickey argues that Officer Champagne would not have had to question this person if he had had more than just a "hunch" that Dickey had been soliciting, and that the customer did not indicate Dickey had asked him for money. (Docs. #47 at 2; #50 at 2).

Dickey's arguments lack merit and misapprehend the law. "[T]he question with respect to [Officer Champagne's] qualified immunity defense is not whether [Dickey] was *guilty* of [loitering and/or soliciting]; rather, the question is whether [Officer Champagne] could reasonably have concluded that *probable cause* existed to believe that [Dickey] had committed that crime." *Bernard v. Detroit Public Sch. Dist.*, No. 12-cv-13992, 2015 WL 2124442, at *9 (E.D. Mich. May 6, 2015) (citing *Regets v. City of Plymouth*, 568 F. App'x 380, 390 (6th Cir. 2014)) (emphasis in original). Moreover, the fact that the one customer told Officer Champagne, "I didn't even hear anything. I didn't pay attention. He [Dickey] said 'excuse me,' and I just walked away," (Doc. #42-3, 20:36:55-20:37:02), does not at all negate Officer Champagne's observations (or the video evidence) of Dickey's interactions with customers. As discussed above, the video depicts Dickey engaging in conduct that would lead a reasonable officer to conclude that there was probable cause to arrest him for soliciting and/or loitering. Officer Champagne acted on more than just a "hunch."

Because probable cause existed to arrest Dickey, there can be no finding that Officer

Champagne violated a constitutional right, and Dickey cannot satisfy the first prong of the qualified immunity analysis.  *Stahl v. Czernik*, 496 F. App'x 621, 623-24, 629 (6th Cir. 2012) (concluding that the defendant "did not commit a constitutional violation because he had probable cause to arrest the plaintiff").  Thus, Officer Champagne is entitled to qualified immunity as to Dickey's First and Fourth Amendment claims regarding his arrest.

*Fourth Amendment Claim – Unreasonable Search and Seizure*

Dickey argues that Officer Champagne violated his Fourth Amendment rights by "illegally detaining" him and subjecting him to an "unwarranted" search and seizure.  (Docs. #47 at 1; #50 at 3).  He argues that there was no reasonable suspicion for an investigatory stop and again that Officer Champagne acted simply off of a "hunch."  (Docs. #47 at 2; #50 at 2, 5).

"The Fourth Amendment requires that searches and seizures be reasonable"; "[a] search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000).  Three types of encounters between individuals and the police raise Fourth Amendment concerns:  (1) "consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked some questions"; (2) "a temporary involuntary detention, or *Terry* stop, which must be predicated upon reasonable suspicion"; and (3) "arrests which must be based on probable cause."  *Hummons v. Hamilton Cnty. Sheriff's, Office*, No. 1:10-cv-221, 2011 WL 1463583, at *3 (S.D. Ohio Mar. 22, 2011) (quoting *United States v. Campbell*, 486 F.3d 949, 953-54 (6th Cir. 2007)); *United States v. Avery*, 137 F.3d 343, 352 (6th Cir. 1997) (internal citations omitted).  In a consensual encounter, the police approach an individual in public and ask him questions or for identification – but "the individual remains free to leave." *Hummons*, 2011 WL 1463583, at *3 (citing *Campbell*, 486 F.3d at 953-54).  The police do not need

15

reasonable suspicion or probable cause in a consensual encounter because it does not constitute a seizure. *Id.* (citing *Campbell*, 486 F.3d at 954).

"[A] Fourth Amendment seizure occurs when, under the totality of the circumstances, a reasonable person would have believed that he was not free to walk away from the encounter with a police officer." *Id.* at *4 (citing *Campbell*, 486 F.3d at 954). An officer who initiates this kind of seizure "must have reasonable suspicion of criminal activity to warrant a [*Terry*] stop." *Id.* (citing *Campbell*, 486 F.3d at 954). In other words, "[p]olice only need a reasonable suspicion of criminal activity to conduct a brief investigatory detention." *Gardenhire*, 205 F.3d at 313 (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "An investigatory stop does not violate the Fourth Amendment if the officer had a 'reasonable suspicion to believe criminal activity 'may be afoot.''" *Hummons*, 2011 WL 1463583, at *4 (quoting *United States v. Lugman*, 522 F.3d 613, 616 (6th Cir. 2008)). The court considers "the totality of the circumstances to determine whether the officer had a 'particularized and objective basis' to suspect criminal activity may be occurring." *Id.* (quoting *Lugman*, 522 F.3d at 616).

Dickey characterizes his interaction with Officer Champagne as a *Terry* stop, which means that Officer Champagne must have had reasonable suspicion to carry out a Fourth Amendment "seizure."[10] The Court finds that this reasonable suspicion requirement is met. For the reasons discussed above, when Officer Champagne approached Dickey at the water fountain, probable cause existed that Dickey had violated the ordinances in question. Officer Champagne also radioed for background information on Dickey and was told that Dickey "has threatened to

_____

[10] Dickey acknowledges that he "walked away" from Officer Champagne at the water fountain (Dickey Dep. at 38-39; Doc. #47 at 3) and was then "walking freely" after Officer Champagne approached him. (Doc. #17 at 1). The surveillance video confirms this. (Doc. #42-5, Ex. D at 08:45). But because Dickey is the non-moving party as to Defendants' motion, the Court construes the evidence in his favor and analyzes the interaction as a Fourth Amendment seizure and not as a consensual encounter. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

jump in traffic before."  (Doc. #42-6, Ex. E at Item 44).  Officer Champagne therefore did not commit an unreasonable search and seizure when he approached Dickey, and Officer Champagne is entitled to qualified immunity as to Dickey's Fourth Amendment claim.

*Fourteenth Amendment Due Process Claim – False Police Report*

Dickey argues that the "police report" authored by Officer Champagne (Doc. #48 at 3-4) is "completely false and fabricated" because he was not asking people for money and did not start swearing at Officer Champagne until after he was arrested.  (Doc. #50 at 1, 4).  Dickey argues that the Walmart surveillance video indicates that he did not commit a crime and that he instead remained calm during his interaction with Officer Champagne.  (Docs. #47 at 2-3; #50 at 4).  Dickey also asserts that an off-duty police officer who was questioned after Dickey went to jail "said he heard the whole thing inside the store and [that Dickey] was not us[i]ng profanity." (Docs. #17 at 2; #50 at 5).  While Dickey does not seem to present his false police report claim as a constitutional violation, even if he had, it would not succeed.

The filing of a false police report "alone does not itself deprive a person of a constitutional right under the Fourteenth Amendment."  *White v. Tamlyn*, 961 F. Supp. 1047, 1056 (E.D. Mich. 1997).  "Such action only constitutes a due process violation when the falsified report[] lead[s] to an unconstitutional deprivation of life, liberty or property."  *Id.* (internal citation omitted).  Here, Officer Champagne had probable cause to arrest Dickey based on the video evidence, so Dickey could not assert this kind of claim because his arrest was constitutional, regardless of the police report's contents.  Moreover, Dickey provided no evidence that the report was authored before he was arrested and therefore led to his arrest.

In addition, Dickey has not provided any evidence that the police report was actually false.  The copy of the police report Dickey provided contains notes that are hard to understand.

His notes link portions of the document to handwritten words such as "racial profiling," "lie," "I was smoking," and "why am I calm in the video."  (Doc. #48 at 3-4).  These notes are insufficient to show that the police report was false and that Dickey's Fourteenth Amendment rights were violated by it.  Thus, Dickey has again failed to raise a material question of fact that Officer Champagne committed a constitutional violation.  Officer Champagne is therefore entitled to qualified immunity as to Dickey's claim alleging that the police report was false.

> b.  <u>Officer Kuznicki</u>

> *Dickey's Fourteenth Amendment Equal Protection Claim – Racial Profiling*

Dickey alleges that he was subjected to "racial profiling" by Officer Kuznicki when she identified him over the radio based on a description of him being "heav[]yset and black" and without seeing his identification.  (Docs. #17 at 2; Dickey Dep. at 39, 45-46; #47 at 3; #50 at 3-4).  He argues that this is unlawful under the Fourteenth Amendment because the police knowing him from "prior contact" does not mean they can "assume that every heavyset black male is [him]."  (Doc. #50 at 4).

It is established in this circuit that "the Fourteenth Amendment [Equal Protection Clause] protects citizens from police action . . . based solely on impermissible racial considerations." *Avery*, 137 F.3d at 353.  "This protection extends to racial profiling."  *Hummons*, 2011 WL 1463583, at *6 (citing *High v. Fuchs*, 74 F. App'x 499, 502-03 (6th Cir. 2003)).  "If law enforcement . . . takes steps to initiate an investigation of a citizen based solely upon that citizen's race, without more, then a violation of the Equal Protection Clause has occurred." *Avery*, 137 F.3d at 355.

Allegations of racial profiling "are governed by the same principles as allegations of selective prosecutions based on race," which are analyzed under a three-part test.  *Smith v. City*

18

*of Wickliffe*, No. 1:05CV1662, 2006 WL 1473435, at *2-3 (N.D. Ohio May 23, 2006) (internal citation omitted).  To properly satisfy this claim, the plaintiff must show by clear and convincing evidence that (1) the officer singled out the plaintiff as belonging to an identifiable group (such as race); (2) the officer acted with discriminatory purpose; and (3) the officer's action had a discriminatory effect on the group to which the plaintiff belongs.  *Id.* at *3; *Hummons*, 2011 WL 1463583, at *6 (citing *Cunningham v. Sisk*, 136 F. App'x 771, 774 (6th Cir. 2005)).  A *prima facie* showing of the first element "requires a showing that similarly situated individuals outside the plaintiff's group were treated favorably."  *Smith*, 2006 WL 1473435, at *3 (citing *Gardenhire*, 205 F.3d at 319).

"[T]o prevail under the Equal Protection Clause, [the plaintiff] must prove the decision makers in *his* case acted with discriminatory purpose."  *Avery*, 137 F.3d at 355.  And he "must prove by 'requisite direct, circumstantial, or statistical evidence that he was the target of racial profiling.'"  *Tyler v. Univ. of Louisville*, No. 3:06CV-151-R, 2008 WL 544459, at *11 (W.D. Ky. Feb. 27, 2008) (quoting *United States v. Saucedo*, 226 F.3d 782, 790 (6th Cir. 2000)).  In other words, he must provide "more than speculation."  *Id.* (citing *Saucedo*, 226 F.3d at 790).

Dickey has not presented the evidence necessary to overcome Officer Kuznicki's instant motion.  Regarding the first element, he has not shown that similarly-situated individuals of other races were treated favorably.  Nor has he shown that Officer Kuznicki acted with discriminatory purpose and that Officer Kuznicki's actions had a discriminatory effect on other members of his race.  All he does is make conclusory assertions of "racial profiling."  But "[a]rguments appearing in a party's brief are not evidence," *Brown v. City of Grand Rapids*, No. 1:10-cv-732, 2011 WL 4005390, at *6 (W.D. Mich. Aug. 8, 2011) (citing *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006)), so Dickey has failed to meet his evidentiary burden as to this claim.

Moreover, the factual record makes clear that no "racial profiling" took place.  Instead, it shows that Officer Kuznicki's intuition, based on information previously known to her *about Dickey* (*e.g.*, his multiple prior contacts with the Canton police, his unique (450 pounds) size, and at least two police-involved incidents at the Walmart in question) was correct.  (Dickey Dep. at 16-29, 34-35).   Thus, Officer Kuznicki is entitled to qualified immunity as to Dickey's Fourteenth Amendment claim regarding racial profiling.

In sum, because Officers Champagne and Kuznicki did not violate Dickey's First, Fourth, or Fourteenth Amendment rights, these officers are entitled to qualified immunity as to those claims.  *See Moldovan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

### c.   The Individual Officers are Entitled to Summary Judgment as to Dickey's State-Law Claims

Dickey's amended complaint alleges the state-law claims of false arrest, false imprisonment, and malicious prosecution against Officer Champagne.[11]   (Doc. #17).   In response, Defendants invoke the affirmative defense of governmental immunity.  *See* M.C.L. § 691.1407.  Under Michigan's Governmental Tort Liability Act,

> [a] government employee "enjoys a right to immunity if (1) the employee undertook the challenged acts during the course of his employment and was acting, or reasonably believed that he was acting, within the scope of his authority; (2) the employee undertook the challenged acts in good faith or without malice; and (3) the acts were discretionary, rather than ministerial, in nature."

*Younes v. Pellerito*, 739 F.3d 885, 890 (6th Cir. 2014) (quoting *Bletz v. Gribble*, 641 F.3d 743, 757 (6th Cir. 2011)).   "[I]ntentional torts done by individual government employees are not

---

[11] Defendants point out that these are intentional torts under Michigan law and that Dickey does not allege that the remaining officers committed any intentional torts.  (Doc. #42 at 28-29).

shielded by the governmental immunity statute" unless the employee can show these three factors by a preponderance of the evidence. *McCormick*, 2006 WL 2844457, at *5 (citing *Sudul v. City of Hamtramck*, 221 Mich. App. 455, 458 (Mich. App. 1997)); *Brown v. Lewis*, 779 F.3d 401, 420 (6th Cir. 2014) (citing *Odom v. Wayne Cnty.*, 760 N.W.2d 217, 223 (2008)); *Galinis v. Cnty. of Branch*, 660 F. App'x 350, 357 (6th Cir. 2016) (citing *Odom*, 760 N.W.2d at 228).

"A police officer is entitled to governmental immunity 'if he acted in good faith and honestly believed that he had probable cause to arrest, even if he later learned that he was mistaken.'" *Romo v. Largen*, 723 F.3d 670, 677 (6th Cir. 2013) (quoting *Odom*, 760 N.W.2d at 229).   Unlike the test for federal qualified immunity, which is objective, the test for governmental immunity for intentional torts in Michigan is subjective. *Id.* (citing *Odom*, 760 N.W.2d at 229); *Brown*, 779 F.3d at 420.  Michigan's governmental immunity statute "protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent." *Acklin v. City of Inkster*, 93 F. Supp. 3d 778, 800 (E.D. Mich. 2015) (quoting *Smith v. Stoneburner*, 716 F.3d 926, 934 (6th Cir. 2013)). "Nonetheless, both the Sixth Circuit and this [c]ourt have recognized that '[t]he question of an officer's good faith under Michigan law overlaps considerably, if not entirely, with [the federal qualified immunity] analysis of whether the officer's actions were objectively reasonable under the circumstances.'" *Chesney v. City of Jackson*, 171 F. Supp. 3d 605, 632 (E.D. Mich. 2016) (quoting *Malory v. Whiting*, 489 F. App'x 78, 86 (6th Cir. 2012); citing *Cohn v. DeWeese*, No. 09-12187, 2010 WL 3906227, at *21-22 (E.D. Mich. Sept. 30, 2010)).

Dickey's claims of false arrest, false imprisonment, and malicious prosecution each "require [the] Plaintiff to show that there was not probable cause for his arrest." *Parker v. City of Taylor*, No. 15-10113, 2016 WL 454464, at *2 (E.D. Mich. Feb. 5, 2016) (internal citations

omitted).   "That is, if probable cause for [the] Plaintiff's arrest existed, these claims are precluded."  *Id.  See also Wilson v. Mammoth Video, Inc.*, No. 07-13394, 2009 WL 777866, at *8 (E.D. Mich. Mar. 20, 2009), *as amended* (Mar. 24, 2009) ("A finding of lack of probable cause is the *sine qua non* of any malicious prosecution claim.") (citing *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006)).   Here, because the Court has already determined that Officer Champagne had probable cause to arrest Dickey, Dickey cannot sustain these three claims.

Accordingly, summary judgment is warranted on Dickey's state-law claims of false arrest, false imprisonment, and malicious prosecution against Officer Champagne.

### ii.      *The Charter Township of Canton is Entitled to Summary Judgment as to Dickey's Federal and State-Law Claims*

<u>Federal Claims Under § 1983</u>

Summary judgment in the Charter Township of Canton's favor is proper as to Dickey's federal § 1983 claims.  First, because the Court finds that the individual Defendants committed no constitutional violation and have no liability to Dickey, neither can the Charter Township of Canton be liable to him on his federal claims.  *Ryan v. City of Detroit*, No. 11-CV-10900, 2015 WL 1345280, at *8 (E.D. Mich. Mar. 25, 2015) (citing *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 900 (6th Cir. 2004) (A municipality "cannot be liable under § 1983 absent an underlying constitutional violation by its officers.").  Second, the law is clear that a municipality may not be held vicariously liable for the actions of its employees under § 1983.  *See Connick v. Thompson*, 563 U.S. 51, 60-62 (2011); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  Rather, a municipality is liable only when its official policy or custom directly causes the plaintiff's injury.  *Id.*  Accordingly, "a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. at 694).  *See also*

*Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (noting that under *Monell*, a plaintiff asserting a § 1983 claim "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom").

To state a § 1983 "*Monell*" claim, the plaintiff must show:  (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.  *See Burgess*, 735 F.3d at 478.  Moreover, "[t]o establish municipal liability, a plaintiff must show that the alleged failure to properly train its officers 'amounts to a deliberate indifference to the rights of persons with whom police come into contact,'" where deliberate indifference "requires showing that a 'municipal actor disregarded a known or obvious consequence of his action.'"  *Parker*, 2016 WL 454464, at *3 (internal citations omitted).

Here, because Dickey has presented no evidence of a particular custom or policy, the Charter Township of Canton is entitled to summary judgment on his federal claims.  Nor does he offer any evidence regarding the training that Canton's police officers receive.  The Charter Township of Canton is therefore entitled to summary judgment on Dickey's federal claims.

### State-Law Claims

The Charter Township of Canton is immune from Dickey's state-law claims pursuant to Michigan's Government Tort Liability Act, which provides:  "Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function."  M.C.L. § 691.1407(1).  The Act defines a "governmental function" as "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law."  M.C.L. §

691.1401(f).  This includes "[t]he authority of the city's police officers to 'pursue, arrest and detain' those suspected of violating the laws of Michigan."  *Payton v. City of Detroit*, 211 Mich. App. 375, 392, 536 N.W.2d 233, 241 (1995).  Moreover, "[i]t is well-settled that the management, operation and control of a police department is a governmental function."  *Moore v. City of Detroit*, 128 Mich. App. 491, 496-97, 340 N.W.2d 640, 643 (1983).  "There is no 'intentional tort' exception to governmental immunity."  *Smith v. Dep't of Pub. Health*, 428 Mich. 540, 544, 410 N.W.2d 749, 751 (1987).  It is the plaintiff's burden of bringing forth evidence that such immunity does not exist in the particular case.  *Seales v. City of Detroit*, No. 12-CV-11679, 2017 WL 24868, at *7 (E.D. Mich. Jan. 3, 2017) (citing *McCann v. Michigan*, 398 Mich. 65, 77, 247 N.W.2d 521 (1976)).  This burden requires him to show that a statutory exception applies or that the challenged conduct took place in connection with a nongovernmental function.  *Id.*

Here, Dickey has not asserted that any of the statutory exceptions to governmental immunity apply.  In addition, he has failed to raise a material question that the individual Defendants, during the events in question, were doing anything other than routine policing. Officer Champagne was policing in public and observed what he reasonably believed to be a violation of one or more local ordinances.  He responded to the situation and approached Dickey. Officer Kuznicki then attempted to (and did accurately) identify Dickey in response to Officer Champagne's request for information.  Other officers then arrived to assist in the situation in which Dickey admits becoming "loud" and "cussing them out."  (Dickey Dep. at 47-51; #48 at 1).  Accordingly, the Charter Township of Canton is immune from liability on Dickey's state-law claims under M.C.L. § 691.1407(1).  *See Bobbitt v. Detroit Edison Co.*, 216 F. Supp. 2d 669, 674 (E.D. Mich. 2002) (granting summary judgment to the city because it qualifies for governmental

immunity under the Act where the plaintiff did not allege any of the statutory exceptions and "even if the [city's] police officers did commit the torts Plaintiff alleges, the [city] cannot be held liable for those torts, as the governmental activity in which the officers were engaged, the operation of a police force, constituted the exercise or discharge of a governmental function").

### iii.    Dickey's Summary Judgment Motion Should be Denied

Dickey filed his own summary judgment motion in which he merely repackages his arguments against granting Defendants' motion.  (Doc. #47).   For example, Dickey again contends that he was not soliciting customers outside the Walmart on the night in question, that the police report is "false," and that Officer Kuznicki is "guilty of racial profiling."  Based on the above analysis, the Court finds that summary judgment is warranted for Defendants on all of Dickey's claims.  Accordingly, Dickey's motion for summary judgment should be denied.

## III.    CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(Doc. #42)** be **GRANTED** and that Dickey's Motion for Summary Judgment **(Doc. #47)** be **DENIED**.


Dated: July 24, 2017                                          s/David R. Grand
Ann Arbor, Michigan                                       DAVID R. GRAND
                                                                          United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any

further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 24, 2017.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager